## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER J. HADNAGY, | : | |
| individually and on behalf of | : | |
| SOCIAL-ENGINEER, LLC, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION – LAW |
| | : | |
| vs. | : | |
| | : | |
| JEFF MOSS, | : | JURY TRIAL DEMANDED |
| | : | |
| and | : | |
| | : | |
| DEF CON | : | NO.: _____ |
| COMMUNICATIONS, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## COMPLAINT

AND NOW, comes the Plaintiffs, Christopher J. Hadnagy, individually and on behalf of Social-Engineer, LLC, by and through their attorneys, Comitz Law Firm, LLC, and hereby complain against the Defendants, Jeff Moss and DEF CON Communications, Inc., as follows:

1.     Plaintiff, Christopher J. Hadnagy, (hereinafter referred to as "Plaintiff Hadnagy"), is an adult individual with a current business address of 201 Lackawanna Avenue, Suite 225, Scranton, Lackawanna County, Pennsylvania, 18503.

2.      Plaintiff, Social-Engineer, LLC, (hereinafter referred to as "Plaintiff Social-Engineer"), is a Pennsylvania Limited Liability Company with a registered address of 201 Lackawanna Avenue, Suite 225, Scranton, Lackawanna County, Pennsylvania, 18503.

3.      Plaintiff Hadnagy is the founder and CEO of Plaintiff Social-Engineer.

4.      Plaintiff Hadnagy is also the Founder, Executive Director, & Board Member of The Innocent Lives Foundation, (hereinafter referred to as "the Foundation"), dedicated to identifying anonymous child predators on the Internet and reporting the same to law enforcement agencies.

5.      Defendant, Jeff Moss, (hereinafter referred to as "Defendant Moss"), who also refers to himself and is referred to as "The Dark Tangent" throughout the technology community and/or industry, is an adult individual with a last known address of 2606 2nd Avenue, No. 406, Seattle, King County, Washington, 98121.

6.      Defendant, DEF CON Communications, Inc., (hereinafter referred to as "Defendant DEF CON"), is a Washington for-profit corporation with a principal place of business and/or registered address of 51 West Dayton Street, Suite 305, Edmonds, Snohomish County, Washington, 98020-4111.

7.     DEF CON Communications, Inc., is organized for the purpose of conducting an annual hacker[1] conference in Las Vegas, Nevada, (hereinafter referred to as "the Event"), which is typically held each August.

8.     This year, the Event will be held August 11, 2022 through August 14, 2022, at Caesars Forum, 3911 South Koval Lane, Las Vegas, Nevada 89109.

9.     Defendant Moss is the founder of Defendant DEF CON, is registered as the corporation's governor, and single-handedly recruits and maintains relationships with contributors for the Event.

10.    Defendant Moss regularly attends and conducts business at the Event.

11.    It is believed and therefore averred that Defendant Moss will be present at the Event between August 11, 2022, and August 14, 2022, at which time Plaintiffs intend to effectuate personal service upon Defendant Moss.

12.    Upon information and belief, Defendant Moss has exercised such dominant control over Defendant DEF CON, so much so that Defendant DEF CON serves as the alter ego of Defendant Moss.

13.    In point of fact, it is believed that Defendant DEF CON:

    a.  Does not maintain sufficient corporate books or records nor does it have consistent corporate minutes;

---

[1] *For the purposes of Plaintiffs' Complaint, the term "hacker" refers to a person who uses computers to gain unauthorized access to data. Despite the negative connotation surrounding the term "hacker", a hacker can be defined as an individual utilizing computer, networking, and/or technology skills to address and/or overcome technical problems. A hacker can also be defined as anyone utilizing computer, networking, and/or technology skills to gain unauthorized access to networks and/or systems in order to commit crimes, i.e. virtual identity theft.*

    b. Does not hold regular meetings for its members;

    c. Has allowed Defendant Moss to usurp, assert, and maintain responsibility of the financial control and day-to-day decision-making for Defendant DEF CON;

    d. Was funded and continues to be funded utilizing personal assets of Defendant Moss; and

    e. Has disregarded such other and further corporate formalities as yet to be discovered.

14.    The lack of adherence to corporate formality in conjunction with the individual influence perpetrated upon Defendant DEF CON and permitted by Defendant Moss has blurred the line between individual and corporation, and has henceforth subjected Defendant Moss to personal liability for actions and/or inactions of Defendant DEF CON.

15.    In point of fact, it is believed and therefore averred that there became such unity of ownership and interest that any corporate separateness between Defendant DEF CON and Defendant Moss ceased and/or never existed.

16.    As such, Defendant Moss is liable for the actions, inactions, omissions, commissions, debts, liabilities, and conduct of Defendant DEF CON, specifically for the events set forth and arising under this Complaint.

17.    To therefore adhere to the normal attributes of separate corporate existence between Defendants Moss and DEF CON would sanction a fraud, promote injustice, and/or lead to evasion of legal and financial obligations.

18.     By reason of the aforesaid, as the alter ego of Defendant DEF CON, Defendant Moss is liable for the obligations, debts, and liability of Defendant DEF CON arising under this Complaint.

## Jurisdiction and Venue

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as the parties are citizens of different states and the amount in controversy exceeds seventy-five thousand ($75,000) dollars.

20.     This Court has personal jurisdiction over Plaintiffs, as Social-Engineer, LLC, has a principal place of business and registered office located in the Commonwealth.

21.     Both Plaintiff Hadnagy and Plaintiff Social-Engineer both regularly provide services to Pennsylvania business entities including certain high profile clientele that have refused to do business with Plaintiffs in light of the statements in question.

22.     This Court has personal jurisdiction over Defendants, as Defendants have certain minimum contacts with the Commonwealth of Pennsylvania, specifically as a result of Defendants' efforts to solicit attendance at the Event throughout the Commonwealth via the Defendant DEF CON's website.

23.    Furthermore, for years, Defendants solicited the attendance and participation of Plaintiffs Hadnagy and Social-Engineer, LLC, a Pennsylvania-based company, at the Event.

24.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as certain high-profile clientele of Plaintiffs received the information in the Eastern District and understood it to be harmful to Plaintiffs' reputation(s).

## Factual Allegations

25.    As previously stated, DEF CON Communications, Inc., is organized for the purpose of conducting an annual hacker conference in Las Vegas, Nevada, (hereinafter referred to as "the Event").

26.    The Event is one of the world's largest hacker conventions, and typically hosts professionals to speak about IT-related and/or hacking-related subjects.

27.    The Event also hosts a multitude of "villages" and/or workshops, i.e. break-out sessions that invite smaller groups of attendees to participate in cyber-security challenges and/or demonstrations related to different topics.

28.    The Event oftentimes allows attendees to participate in hacking-related "games", such as Capture the Flag (CTF), which is a hacking competition where teams of hackers attempt to attack and defend computers and/or networks.

29.    The initial Event took place in 1993 and was essentially a party for Defendant Moss's hacker friends, with approximately one hundred (100) participants.

30.    After the initial Event, Defendant Moss decided to hold the event annually, and attendance has grown each year since.

31.    Attendance varies, and at times, law enforcement agencies and representatives from large corporations have attended in an attempt to identify security issues within their organizations.

32.    The Event is highly-regarded in the tech industry, and its legitimacy has grown exponentially since its inception in 1993.

33.    Defendant DEF CON's website boasts that the Event itself "provides a forum for open discussion between participants, where radical viewpoints are welcome and a high degree of skepticism is expected."[2]

34.    In or around 2015, Defendant Moss, by and through Defendant DEF CON, put forth a vague and ambiguous Code of Conduct applicable to attendees and/or participants.

35.    That Code of Conduct remains both vague and ambiguous to date.

---

[2]    *https://defcon.org/html/links/dc-code-of-conduct.html*

36.     However, in July of 2022, Defendants published an updated a Transparency Report regarding the Code of Conduct.[3]

37.      The original Code of Conduct repeatedly addressed Defendant DEF CON's purported zero tolerance policy for "harassment."

38.     According to the Code of Conduct, "we do not condone harassment against any participant, for any reason. Harassment includes deliberate intimidation and targeting individuals in a manner that makes them feel uncomfortable, unwelcome, or afraid."[4]

39.     Prior to February of 2022, Plaintiff Hadnagy was an esteemed participant in the Event, hosting one of the most attended "villages" at the Event, (hereinafter referred to as "the SEVillage").

40.     Plaintiffs first contributed to the Event years ago, and Plaintiff Hadnagy essentially developed the popular Social-Engineer Capture the Flag ("SECTF") game.

41.     The SEVillage focused primarily on Plaintiffs' area of expertise in the tech industry – human error and the threat it poses to information security as well as the application of scientifically proven methodologies to uncover vulnerabilities, define risk, and provide remediation.

---

[3]       *https://defcon.org/html/links/dc-transparency.html*
[4] *See Id.*

8

42.     The SEVillage became extremely popular by and amongst attendees, with the break-out session requiring a 13,000 square foot space to host all willing and eager participants.

43.     Plaintiffs incurred significant costs in order to attend the Event and host the SEVillage.

44.     In August of 2020, due to the COVID-19 pandemic, the Event itself was cancelled and virtualized; nevertheless, DEF CON Safe Mode, a virtual event, was held and offered a full roster of speakers, villages, contests, etc.

45.     However, in August of 2021, the Event was held in-person, in Las Vegas, once again.

46.     Plaintiffs chose not to participate in the Event in August of 2021.

47.     Around that same time period, Defendant Moss and Plaintiff Hadnagy agreed to discuss Plaintiff's contributions to future Events; however, that discussion never actually happened.

48.     Then, suddenly and without warning, in or around January of 2022, Defendants informed Plaintiff Hadnagy that neither he nor Plaintiff Social-Engineer could attend, contribute to, or participate at the Event moving forward.

49.     This ban on Plaintiffs' attendance, contribution, and participation was based on alleged violations of Defendant DEF CON's Code of Conduct, and effectively excluding Plaintiffs from the Event indefinitely.

50.    Plaintiffs denied and continue to deny any violation(s) of the Code of Conduct at any point in time.

51.    Plaintiff Hadnagy made repeated requests for additional, detailed information regarding the alleged violations; his requests were ignored time and again.

52.    Defendants provided no evidentiary support or explanation regarding their abrupt termination of Plaintiffs' attendance, contribution, and participation at the Event.

53.    It is believed and therefore averred that Defendant Moss, individually and acting on behalf of Defendant DEF CON, with knowledge and intent, falsely alleged that Plaintiffs violated the Code of Conduct in order to replace Plaintiffs' SEVillage with another "village" targeted to similar topics but organized and hosted by others.

54.    Furthermore, it is believed and therefore averred that Defendant Moss was aware of the negative impact the false allegations would have on the reputations of both Plaintiffs Hadnagy and Social-Engineer.

55.    On or about February 9, 2022, Defendants Moss and DEF CON subsequently authored and published a Transparency Report, in which stated the following:

> "We received multiple CoC violation reports about a DEF CON Village leader, Chris Hadnagy of the SE Village.

10

> After conversations with the reporting parties and Chris,
> we are confident the severity of the transgressions merits
> a ban from DEF CON."[5]

56.    Defendants' publication of the aforementioned Transparency Report created a widespread firestorm of social media commentary, i.e. Twitter retweets and related posts, reacting to the news of Plaintiff Hadnagy's alleged violations of the Code of Conduct.

57.    Speculation mounted as to what actions were taken by Plaintiff Hadnagy to cause Defendant Moss to abruptly terminate their longstanding business relationship including Plaintiff Hadnagy's invaluable contributions to the Event.

58.    It is believed and therefore averred that due to the vague but troubling statements made by Defendants, many have assumed that Plaintiff Hadnagy perpetrated some sort of sexual assault and/or sexual harassment, thus leading to the ban.

59.    Moreover, many have assumed that whatever Plaintiff Hadnagy has been accused of must have been abhorrent, particularly because the Event typically condones extreme and/or unique behavior.

---

[5] *https://defcon.org/html/links/dc-transparency.html*

60.    On February 10, 2022, an article entitled "DEF CON bans social engineering expert Chris Hadnagy," authored by Shaun Nichols, was published via TechTarget.com.[6]

61.    By way of background, TechTarget.com is a renowned and well-known news source serving the tech community.

62.    According to that article, Plaintiff Hadnagy, "an influential figure at the DEF CON security conference, was permanently banned following allegations of misconduct at the annual Las Vegas gathering."

63.    The article goes on to state that Plaintiff Hadnagy was accused of violations, but that no specifics regarding those violations were provided by Defendants.

64.    It is indisputable that the Transparency Report, and the article that references it, were both able to be received and accessed throughout the United States and abroad, thanks to the ability to widely disseminate information via the Internet.

65.    Not only did Defendants' statements damage the reputation of Plaintiff Hadnagy, but they also had a harmful impact on the business dealings of Plaintiff Social-Engineer, as a plethora of the company's clients and potential clients have

---

[6]    *https://www.techtarget.com/searchsecurity/news/252513274/DEF-CON-bans-social-engineering-expert-Chris-Hadnagy.*

refused to do business with Plaintiffs since the defamatory statements were published.

66.     Immediately after the publication of the Transparency Report, actual and potential clients of Plaintiffs began to terminate their relationships with Plaintiffs, specifically citing the allegations made by Defendants as the reason for their respective terminations.

67.     As a result of Defendants' statements, Plaintiff Hadnagy has become a victim of "cancel culture" in the tech industry, which has devastated not only the once extremely successful Social-Engineer, LLC, but also the Foundation and its efforts to identify child predators.

68.     Defendant DEF CON'S various Transparency Reports, including the Transparency Report at issue, are and have been readily accessible via its website.

69.     Ironically, Defendant Moss has refused to communicate with Plaintiff Hadnagy, offering absolutely no further explanation, public or private, as to what specific conduct constituted a violation of the Code of Conduct.

70.     As a result, Plaintiffs have suffered, and continue to suffer, detrimental harm to their reputations and business relationships as set forth herein.

71.     For example, Plaintiffs' longstanding client, Northern Trust Corporation, with office(s) located in Philadelphia, Pennsylvania, terminated its

contract(s) with Plaintiffs and specifically stated that the cause to be Defendants' statements regarding Plaintiffs in the February 9, 2022 Transparency Report.

72.    Northern Trust is one of a plethora of Plaintiffs' clients and/or business relations, which span the globe, that have chosen to part ways with Plaintiffs in light of Defendants' false statements, innuendo, and implications concerning Plaintiffs.

## COUNT I – DEFAMATION
### Plaintiffs vs. Defendants

73.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 72, above, as though fully set forth herein at length.

74.    Defendants Moss and DEF CON published the aforementioned Transparency Report dated February 9, 2022, containing statements, innuendo, and implications concerning Plaintiffs Hadnagy and Social-Engineer to individuals who understood those statements, innuendo, and implications to refer to, and defame, Plaintiffs.

75.    This communication inescapably implies that Plaintiff Hadnagy and/or Plaintiff Social-Engineer were outrageous enough to warrant a permanent ban from attending the Event despite Plaintiffs' positive history as contributors at the Event.

76.    Defendants' publication falsely, maliciously, and willfully accused Plaintiff Hadnagy of, as described above, purported violations of Defendant DEF CON'S Code of Conduct, alleging that Plaintiffs' behavior was so violative of the Code of Conduct that it warranted a permanent ban on their attendance.

14

77.    The implications arising from the vague yet scathing statements in the Transparency Report immediately and severely disparaged Plaintiffs' reputation.

78.    Defendants published their false statements as detailed further herein with knowledge of their falsity, and/or reckless disregard for the truth, and did so intentionally and/or recklessly, willfully, and with actual malice and in blatant disregard of Plaintiffs' rights, to portray Plaintiff Hadnagy, specifically, including to falsely accuse him of what could only be despicable conduct, in order to harm his reputation and cause him and Plaintiff Social-Engineer other harms.

79.    Plaintiffs have suffered severe and irreversible harm as a direct and proximate result of Defendants' defamatory statements and their publication of the same.

80.    Moreover, Defendants' false and defamatory statements, innuendo, and implications have severely injured Plaintiff Hadnagy in that these statements have tended to tarnish his reputation, exposed him to public ridicule, have harmed his future professional prospects in the tech industry, and subjected him to emotional distress, severe mental anguish, embarrassment, and humiliation, thus damaging him personally and professionally.

81.    Defendants' false and defamatory statements, innuendo, and implications have also severely injured Plaintiff Social-Engineer in that these

statements have created a shroud of scandal over the company thus harming its relationships with longstanding clientele and future business prospects.

82.    Defendants' defamatory statements were so outrageous and malicious as to warrant the imposition of punitive damages.

83.    As a direct and proximate result of Defendants' malicious, willful, and intentional and/or reckless conduct, Plaintiffs are entitled to such damages as will compensate them for the injuries to their respective reputations, for Plaintiff Hadnagy's emotional and psychological distress, and punitive damages to punish Defendants for their conduct and deter them from similar acts in the future.

WHEREFORE, Plaintiffs, Christopher J. Hadnagy, individually and on behalf of Social-Engineer, LLC, demand judgment in their favor and against Defendants, Jeff Moss and DEF CON Communications, Inc., in an amount in excess of seventy-five thousand ($75,000) dollars, together with punitive damages, interest, the costs of this action, and such other and further relief as the Court deems just and appropriate.

### COUNT II – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
### Plaintiffs vs. Defendants

84.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 83, above, as though fully set forth herein at length.

85.     Defendants, knowing the truth, intentionally and/or acting in reckless disregard as to the falsity of the matter, publicized false and defamatory statements, innuendos, and implications about Plaintiffs in the February 9, 2022 Transparency Report, which was readily available for public access by the tech community.

86.     By and through the false and defamatory statements, innuendos, and implications described herein, Defendants intentionally interfered with Plaintiffs' contractual relationships with actual and prospective clientele.

87.     Defendants published the Transparency Report despite their knowledge that it would undoubtedly interfere with Plaintiffs' ability to retain and grow its business.

88.     Defendants' publication of their defamatory statements, innuendos, and implications regarding Plaintiffs diverted business opportunities, as well as financial benefits derived from those business opportunities, away from Plaintiffs.

89.     As a direct result of Defendants' conduct, Plaintiffs have been detrimentally impacted and suffered extensive damages as a result.

90.     Specifically, as a direct and proximate result of Defendants' purposeful interference, Plaintiffs have been unable to foster and continue their business relationships with actual and prospective clientele.

91.     Defendants' conduct was intentional, willful, malicious, extreme, and outrageous, and thus warrants an award of punitive damages.

WHEREFORE, Plaintiffs, Christopher J. Hadnagy, individually and on behalf of Social-Engineer, LLC, demand judgment in their favor and against Defendants, Jeff Moss and DEF CON Communications, Inc., in an amount in excess of seventy-five thousand ($75,000) dollars, together with punitive damages, interest, the costs of this action, and such other and further relief as the Court deems just and appropriate.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### Plaintiffs vs. Defendants

92.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 91, above, as though fully set forth herein at length.

93.     At all times relevant hereto, valid and enforceable contractual relationships existed by and between Plaintiff Hadnagy and/or Social-Engineer and third parties, i.e. actual and prospective clientele of Plaintiff Social-Engineer.

94.     Defendants were aware of the existence of the aforementioned contractual relationships by and between Plaintiff Hadnagy and/or Social-Engineer and third parties, i.e. actual and prospective clientele of Plaintiff Social-Engineer.

95.     Defendants publicized false and defamatory statements, innuendos, and implications about Plaintiffs in the February 9, 2022 Transparency Report, which was readily available for public access by the tech community.

96.     Upon information and belief, the conduct of Defendants Moss and DEF CON was calculated and intended to harm Plaintiffs' reputation and business relationships for their benefit.

97.     As a direct result of Defendants' conduct, Plaintiffs have been damaged, and will continue to suffer damage to their personal and/or business reputation, loss of profits, loss of good will, and the loss of Plaintiff Social-Engineer's competitive advantage in the marketplace.

98.     Specifically, a multitude of actual and prospective clientele terminated their respective contractual relationships with Plaintiffs as a result of Defendants' conduct.

99.     As such, Plaintiffs have lost, and will continue to lose, actual and potential clientele, and have suffered damages as set forth herein.

100.   Defendants' conduct was intentional, willful, malicious, extreme, and outrageous and warrants the imposition of punitive damages.

WHEREFORE, Plaintiffs, Christopher J. Hadnagy, individually and on behalf of Social-Engineer, LLC, demand judgment in their favor and against Defendants, Jeff Moss and DEF CON Communications, Inc., in an amount in excess of seventy-five thousand ($75,000) dollars, together with punitive damages, interest, the costs of this action, and such other and further relief as the Court deems just and appropriate.

## COUNT IV – INVASION OF PRIVACY / FALSE LIGHT
### Plaintiffs v. Defendants

101.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 100, above, as though fully set forth herein at length.

102.   Defendants, knowing the truth, intentionally and/or acting in reckless disregard as to the falsity of the matter they publicized as well as the false light in which it placed both Plaintiff Hadnagy and Plaintiff Social-Engineer, published the Transparency Report on February 9, 2022, willfully and with actual malice.

103.   Defendants' statements have been widely publicized to the tech community as well as the general public, and as such, Defendants placed Plaintiffs before the public in a false light.

104.   Defendants' allegations regarding Plaintiffs' alleged violations of the Code of Conduct and the statements made in the Transparency Report were highly offensive to those reasonable persons with access to the public Transparency Report and/or who were learned of Defendants' defamatory statements via dissemination by and/or through news sources.

105.   As a direct and proximate result of Defendants' malicious, willful, and intentional and/or reckless conduct, Plaintiffs are entitled to such damages as will compensate them for the injuries to their respective reputations, for Plaintiff Hadnagy's emotional and psychological distress, and punitive damages to punish Defendants for their conduct and deter them from similar acts in the future.

WHEREFORE, Plaintiffs, Christopher J. Hadnagy, individually and on behalf of Social-Engineer, LLC, demand judgment in their favor and against Defendants, Jeff Moss and DEF CON Communications, Inc., in an amount in excess of seventy-five thousand ($75,000) dollars, together with punitive damages, interest, the costs of this action, and such other and further relief as the Court deems just and appropriate.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff, Christopher J. Hadnagy, Individually v. Defendants

106.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 105, above, as though fully set forth herein at length.

107.   Defendants intentionally publicized defamatory statements, innuendo, and implications regarding Plaintiff Hadnagy via the February 9, 2022 Transparency Report despite having knowledge of the fact that the information being disseminated about Plaintiff was entirely false.

108.   Defendants further acted with reckless disregard as to the falsity of the information being disseminated about Plaintiff Hadnagy but continued to engage in defamatory statements, innuendo, and implications regardless of their falsity.

109.   Defendants' conduct to date has been both extreme and outrageous.

110.   Plaintiff Hadnagy has suffered emotional and psychological distress as a direct and proximate result of Defendants' conduct.

WHEREFORE, Plaintiffs, Christopher J. Hadnagy, individually and on behalf of Social-Engineer, LLC, demand judgment in their favor and against Defendants, Jeff Moss and DEF CON Communications, Inc., in an amount in excess of seventy-five thousand ($75,000) dollars, together with punitive damages, interest, the costs of this action, and such other and further relief as the Court deems just and appropriate.

DATE: August 3, 2022                BY:     */s/ Jonathan S. Comitz*
                                            JONATHAN S. COMITZ, ESQ.
                                            I.D. NO.:  90914
                                            46 Public Square, Suite 101
                                            Wilkes-Barre, PA 18701
                                            (570) 829-1111
                                            jcomitz@comitzlaw.com

                                            */s/ Jeremy R. Weinstock*
                                            JEREMY R. WEINSTOCK, ESQ.
                                            I.D. NO.:  319120
                                            46 Public Square, Suite 101
                                            Wilkes-Barre, PA 18701
                                            (570) 829-1111
                                            jweinstock@comitzlaw.com

                                            */s/ Ashley A. Zingaretti*
                                            ASHLEY A. ZINGARETTI, ESQ.
                                            I.D. NO.:  325167
                                            46 Public Square, Suite 101
                                            Wilkes-Barre, PA 18701
                                            (570) 829-1111
                                            azingaretti@comitzlaw.com

## VERIFICATION

I, CHRISTOPHER J. HADNAGY, individually and on behalf of SOCIAL-ENGINEER, LLC, hereby aver and state that I have read the foregoing document which has been drafted by my counsel.  The factual statements contained therein are true and correct to the best of my knowledge, information, and belief although the language is that of my counsel, and, to the extent that the content of the foregoing document is that of my counsel, I have relied upon my counsel in making this Verification.

This statement is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which provides that if I make knowingly false statements, I may be subject to criminal penalties.

_____
CHRISTOPHER J. HADNAGY,
Individually and on behalf of
SOCIAL-ENGINEER, LLC