IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER J. HADNAGY, individually and on behalf of SOCIAL-ENGINEER, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JEFF MOSS, and<br>DEF CON COMMUNICATIONS, INC.,<br><br>Defendants. | 2:22-cv-03060-WB |

**JOINT REPORT OF RULE 26(f) MEETING AND PROPOSED DISCOVERY PLAN**

In accordance with Federal Rule of Civil Procedure 26(f) and the Court's September 2, 2022 Notice of Preliminary Pretrial Conference (Dkt. 14), counsel for the parties conferred on September 7, 2022, and submit to Chambers the following report of their meeting for the Court's consideration.[1]

**1.  Discussion of Claims, Defenses, and Relevant Issues.**

• **Factual background relevant to Plaintiff's claims.**

In short, Plaintiff Christopher J. Hadnagy is the founder and CEO of Plaintiff Social-Engineer, LLC, a Pennsylvania Limited Liability Company. As set forth at length in their Complaint, suddenly and without warning, in or around January of 2022, Defendants Jeff Moss and DEF CON COMMUNICATIONS, INC., informed Plaintiff Hadnagy that neither he nor Plaintiff Social-Engineer could attend, contribute to, or participate at Defendants' annual hacker conference in Las

---

[1] As a threshold issue, Defendants Jeff Moss and Def Con Communications dispute that personal jurisdiction is appropriate over them in the Eastern District of Pennsylvania; intend to move to dismiss the Complaint based on, among other things, lack of personal jurisdiction; and reserve all rights to challenge personal jurisdiction over Defendants notwithstanding the submission of this Rule 26(f) report as required by the Court's September 2 Notice.

Vegas, Nevada, (hereinafter referred to as "the Event") despite a longstanding positive history.

This ban on Plaintiffs' attendance, contribution, and participation was based on alleged violations of Defendant DEF CON's Code of Conduct (COC), and effectively excluded Plaintiffs from the Event indefinitely. Defendants provided no evidentiary support or explanation regarding their abrupt termination of Plaintiffs' participation at the Event, and it is Plaintiffs' position that Defendant Moss, individually and acting on behalf of Defendant DEF CON, with knowledge and intent, falsely alleged that Plaintiffs violated the Code of Conduct to replace Plaintiffs' SEVillage at the Event with another "village" targeted to similar topics but organized and hosted by others. It is believed and therefore averred that these "others" included a disgruntled former employee of Plaintiffs, who played a key role in the orchestration of Plaintiffs' takedown.

After the ban, Defendants disseminated via the DEF CON website a vague Transparency Report referencing alleged violations of the COC. Due to the vague but troubling statements made by Defendants, many have assumed that Plaintiff Hadnagy perpetrated some sort of sexual assault and/or sexual harassment, thus leading to the ban. Plaintiffs have alleged that certain high-profile clientele received Defendants' false statements, innuendo, and implications concerning Plaintiffs in the Eastern District and understood them to be harmful to Plaintiffs' reputation(s).

- **Factual background relevant to Defendants' defenses.**

Each year, Defendant Def Con Communications ("Def Con") hosts one of the largest and most influential information and computer security conferences in the country. The event, known as Def Con, is the preeminent industry gathering of "hackers" and draws tens of thousands of attendees annually. Defendants are standard-bearers in the hacking community.

In late 2021, an ex-employee of Plaintiff Social-Engineer LLC ("Social-Engineer") approached Defendant Def Con through a third party. The ex-employee described to the third party a campaign of abusive, harassing, and controlling behavior by Plaintiff Chris Hadnagy

precipitated by her decision to leave Social-Engineer. The third party reached out to Plaintiff Hadnagy, who corroborated the ex-employee's assertions in key respects but offered post-hoc and factually unsatisfactory explanations for his conduct. Defendant DEF CON then connected with at least half a dozen other members of the hacking community who described similar inappropriate conduct by Plaintiff Hadnagy.

Plaintiff Hadnagy's misconduct gravely concerned Defendant DEF CON, especially since (among other things) Plaintiff Hadnagy had personally confirmed the ex-employee's allegations. Defendant Def Con took seriously, and continues to take seriously, its position as the host of the preeminent event in the hacking industry. Defendant Def Con did not want to provide a platform to an individual engaging in the kind of behavior in which Plaintiff Hadnagy had admittedly and unapologetically engaged. Accordingly, on February 9, 2022, Defendant Def Con released the following statement announcing Plaintiff Hadnagy's ban from subsequent Def Con conferences, which constitutes the entirety of the alleged defamation in this case:

> We received multiple [code of conduct] violation reports about a DEF CON Village leader, Chris Hadnagy of the SE Village. After conversations with the reporting parties and Chris, we are confident the severity of the transgressions merits a ban from DEF CON.

The statement above is true and, as discovery and motion practice will demonstrate, cannot support Plaintiffs' defamation-related and tortious-interference-related causes of action.

- **Plaintiffs' primary issues, threshold issues, and issues on which to conduct discovery.**

From Plaintiffs' perspective, as a threshold issue, Plaintiffs presume (and have been informed by opposing counsel) that Defendants intend to dispute, *inter alia*, personal jurisdiction. Plaintiffs disagree with regard to an alleged lack of personal jurisdiction and reserve the right to oppose any and all arguments to the same set forth in Defendants' anticipated Motion(s) to Dismiss Plaintiffs' Complaint.

Plaintiffs' primary issues are those set forth in Counts I through V of Plaintiffs' Complaint, and include, but are not limited to, the following:

- Whether or not Defendants published false statements with knowledge of their falsity, and/or reckless disregard for the truth, and did so intentionally and/or recklessly, willfully, and with actual malice and in blatant disregard of Plaintiffs' rights, to portray Plaintiff Hadnagy, specifically, including to falsely accuse him of what could only be despicable conduct, in order to harm his reputation and cause him and Plaintiff Social-Engineer other harms.
- Whether or not Plaintiffs have suffered severe and irreversible harm as a direct and proximate result of Defendants' defamatory statements and their publication of the same.
- Whether or not Defendants intentionally interfered with Plaintiffs' contractual relationships with actual and prospective clientele.
- Whether or not Defendants tortiously interfered with Plaintiffs' contractual relationships with actual and prospective clientele.
- Whether or not Defendants' statements have been widely publicized to the tech community as well as the general public, and as such, Defendants placed Plaintiffs before the public in a false light.
- Whether or not Defendants' conduct to date has been both extreme and outrageous.
- Whether or not Plaintiff Hadnagy has suffered emotional and psychological distress as a direct and proximate result of Defendants' conduct.

Plaintiffs intend to conduct written discovery on the following issues: Information and documentation pertaining to the alleged COC violations, including but not limited to instances of alleged harassment, that led to Plaintiffs' ban from the Event, i.e. Defendants' allegation that they are insulated from liability as "truth" is their defense; Identities of any and all fact witnesses with information regarding the alleged COC violations that led to Plaintiffs' ban from the Event so that relevant deposition testimony can be conducted; Information regarding the publication of February 9, 2022 Transparency Report including author, source of information set forth in Report, method of dissemination, and its intended recipients; Information re: solicitation of participants in Event; Information and/or documentation regarding the corporate formalities, if any, exercised by Defendant DEF CON; Communications exchanged by and between Plaintiffs and Defendants at all times relevant hereto; etc.

Plaintiffs also intend to conduct depositions, including the deposition of Defendant Moss, subsequent to receipt and review of Defendants' responses to Plaintiffs' Interrogatories and Requests for Production of Documents. Additional witnesses may be identified throughout the course of written discovery and subsequently noticed.

- **Defendants' primary issues, threshold issues, and issues on which to conduct discovery.**

The first threshold issue is the lack of personal jurisdiction over Defendants in the Eastern District of Pennsylvania. Plaintiffs' conclusory jurisdictional allegations in Paragraphs 22 and 23 of the Complaint lack legal and factual merit and are insufficient to establish personal jurisdiction over Defendants, who are residents of Washington with very limited contact with the Eastern District of Pennsylvania.

The second threshold issue is that Plaintiffs' alter ego allegations against Defendant Jeff Moss in his individual capacity lack merit, are conclusory, and cannot support claims against Defendant Moss separate and apart from the claims against Defendant DEF CON.

Even if the Court moves beyond the threshold issues, Plaintiff's claim still fails because (1) every part of the allegedly defamatory statement is true; (2) Plaintiffs' tortious inference claim lacks merit because, among other reasons, Defendants lacked any intent to interfere with any of Plaintiffs' contracts, and any interference with Plaintiffs' contracts was not improper; and (3) even accepting Plaintiffs' allegations as true, no reasonable factfinder could conclude that Defendants' conduct meets the extremely high bar in Pennsylvania for intentional infliction of emotional distress.

Turning to discovery, this case should not reach the discovery stage, as there is not personal jurisdiction over Defendants in the Eastern District of Pennsylvania and Plaintiffs' claims are not colorable.  However, if Defendants' forthcoming motion to dismiss is not granted, Defendants

intend to conduct discovery on, among other topics, Plaintiff Hadnagy's conduct towards the ex-employee who sought help from the third party to stop Plaintiff Hadnagy's campaign of harassment against her; Plaintiff Hadnagy's conduct towards other ex-employees; Plaintiff Hadnagy's conduct towards others in the hacking industry; and Plaintiffs' alleged damages. Defendants will need this information in discovery to prepare motion(s) for summary judgment and demonstrate, among other things, that (1) there is no genuine issue of material fact as to the truth of Defendant DEF CON's February 9, 2022, statement about Plaintiff Hadnagy, and (2) Plaintiffs' damages claims are not colorable.

- **Plaintiffs' likely motions and their timing.**

None at this time. Plaintiffs reserve the right to file any and all motions reasonable and necessary throughout litigation without creating an undue delay to the parties and the Court.

- **Defendants' likely motions and their timing.**

As alluded to above, Defendants intend to file a motion to dismiss on October 11, 2022, challenging personal jurisdiction and the legal sufficiency of Plaintiffs' claims. If this motion is denied, Defendants intend to file a motion for summary judgment at the close of discovery.

2. **Initial and Informal Disclosures.**

The parties agree that, in light of the jurisdictional issue and privacy concerns raised by certain non-party witnesses, initial disclosures should wait until after the Court decides the jurisdictional issue. Counsel for Plaintiffs and Defendants therefore request to postpone the exchange of initial disclosures until seven (7) business days of the Court's Order ruling on Defendants' Motion(s) to Dismiss.

3. **Formal Discovery.**

The parties have discussed the scope of discovery and scale of this case and we do not foresee the need to go beyond the maximum number of Interrogatories and depositions prescribed

by the Federal Rules of Civil Procedure.

That being said, the parties have discussed and agree that factual discovery (including written discovery and depositions) can be completed within one hundred and forty-five (145) days from receipt of an Order ruling on Defendants' Motion(s) to Dismiss. The parties have further agreed that any and all dispositive motions should be filed within thirty (30) days of the factual discovery deadline, with responses due twenty (20) days thereafter. Furthermore, Defendants request thirty (30) days after Plaintiffs' expert witness report deadline in which to file Defendants' expert witness report(s), if any.

4. **Electronic Discovery.**

Counsel for Plaintiffs is in receipt of Defendants' standard e-discovery/electronically stored information (ESI) protocols and is in the process of reviewing the same. Counsel intend to reach an agreement as to how they will conduct e-discovery, if necessary, prior to the Rule 16 Conference, and shall advise the Court of that agreement at said Conference.

5. **Expert Witness Disclosures.**

Defendants do not believe expert witness testimony is necessary or appropriate in this matter.

Plaintiffs may require expert witness testimony, i.e. regarding Plaintiffs' purported damages, and will provide opposing counsel with information regarding any such expert witness, as well as a copy of any report(s) to be admitted, on or before Plaintiffs' expert report deadline as established by this Honorable Court.

6. **Early Settlement or Resolution.**

Defendants do not see any prospect of settlement at this time given the procedural and substantive issues with the Complaint.  Defendants will reassess the prospect of early resolution after the Court's ruling on Defendants' forthcoming motion to dismiss challenging (among other things)

the lack of personal jurisdiction over Defendants.

Plaintiffs are open to settlement discussions now and in the future.

**7.    Trial Date.**

Both Plaintiffs and Defendants can be ready for trial within three hundred (300) days after receipt of an Order ruling on Defendants' Motion(s) to Dismiss.

**8.    Other.**

N/A.

**Date: September 7, 2022**

Respectfully Submitted:

By: _/s/ Ashley A. Zingaretti_
Ashley A. Zingaretti
**COMITZ LAW FIRM, LLC**
46 Public Square
Wilkes-Barre, PA 18701
570-829-1111
azingaretti@comitzlaw.com

*Counsel for Plaintiff, Christopher J. Hadnagy, Individually and on behalf of Social-Engineer, LLC*

By: _/s/ Jonathan L. Cochran_
Jonathan L. Cochran
John S. Stapleton
**LeVAN STAPLETON SEGAL COCHRAN LLC**
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
215.261.5210
jcochran@levanstapleton.com

David Perez (admitted PHV)
**PERKINS COIE LLP**
1201 Third Avenue
Suite 4900
Seattle, Washington 98101-3099
206.359.6767
DPerez@perkinscoie.com

Matthew Mertens (admitted PHV)
**PERKINS COIE LLP**
1120 NW Couch Street, 10th Floor
Portland, Oregon 97209-4128
503.727.2199
MMertens@perkinscoie.com

*Counsel for Defendants Jeff Moss and DEF CON Communications, Inc.*