**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER J. HADNAGY, individually and on behalf of SOCIAL-ENGINEER, LLC, | No. 2:22-cv-03060-WB |
| Plaintiffs, | Defendants' Memorandum of Law in Support of Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim |
| v. | |
| JEFF MOSS, and DEF CON COMMUNICATIONS, INC., | Oral Argument Requested |
| Defendants. | |

**Table of Contents**

I.   INTRODUCTION .................................................................................1

II.  BACKGROUND ................................................................. 2

III. LEGAL STANDARD ......................................................... 5

IV. ARGUMENT ...................................................................... 6

   A.   The Court lacks personal jurisdiction over Defendants ............... 6

     1.   Mr. Hadnagy's "solicitation" theory does not establish personal jurisdiction. ................................................................. 8

     2.   Operating the Def Con website does not establish personal jurisdiction. ................................................................. 10

   B.   Mr. Hadnagy's claims also fail as a matter of law. ..................... 11

     1.   The alter ego claims against Mr. Moss ........................................ 11

     2.   The defamation and false light claims. ....................................... 13

     3.   The tortious interference claims .................................................. 17

     4.   The intentional infliction of emotional distress ("IIED") claim. . 19

V.  CONCLUSION .................................................................. 22

## Table of Authorities

CASES

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937 (2009) .............................................. 5, 11

*Danziger & De Llano, LLP v. Morgan Verkamp LLC,*
948 F.3d 124 (3d Cir. 2020) ............................................................. 7, 9

*Di Loreto v. Costigan,*
600 F. Supp. 2d 671 (E.D. Pa.), *aff'd*, 351 F. App'x 747
(3d Cir. 2009) ................................................................................ 20, 21

*Dixon v. Boscov's, Inc.,*
No. 02–1222, 2002 WL 1740583 (E.D. Pa. July 17, 2002) ................ 21

*Empire Trucking Co. v. Reading Anthracite Coal Co.,*
2013 PA Super 148, 71 A.3d 923 (2013) ............................................ 18

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009) ................................................................. 5

*Fulton v. United States,*
198 F. App'x 210 (3d Cir. 2006) ........................................................ 21

*Harvey A. Kalan, M.D., Inc. v. Koresko Fin. LP,*
No. CV 14-5216, 2020 WL 1853468 (E.D. Pa. Apr. 13, 2020) ............. 7

*Hepp v. Facebook,*
14 F.4th 204 (3d Cir. 2021) ................................................................ 10

*Hill v. Cosby,*
665 F. App'x 169 (3d Cir. 2016) ........................................................ 20

*Hill v. Cosby,*
No. 15CV1658, 2016 WL 491728 (W.D. Pa. Feb. 9, 2016),
*aff'd*, 665 F. App'x 169 (3d Cir. 2016) .............................................. 20

*Hooten v. Penna. College of Optometry*,
    601 F.Supp. 1151 (E.D.Pa.1984).........................................................19

*Hoy v. Angelone*,
    456 Pa. Super. 596, 691 A.2d 476 (1997)...........................................20

*IMO Indus., Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998) ..................................................................9

*In re Maze*,
    1999 WL 554600 (E.D. Pa. July 16, 1999).........................................16

*Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P.*,
    2012 PA Super 71, 40 A.3d 1261 (2012)......................................18, 19

*Kaplan v. MK Invs., Inc.*,
    19 F.3d 1503 (3d Cir. 1994) ................................................................12

*Kelly v. Vertikal Press, Ltd.*,
    No. CV 20-2315, 2020 WL 6395459 (E.D. Pa. Nov. 2, 2020)..............6

*Kyko Glob., Inc. v. Bhongir*,
    807 F. App'x 148 (3d Cir. 2020) ............................................................9

*Malone v. Weiss*,
    No. CV 17-1694, 2018 WL 827433 (E.D. Pa. Feb. 12, 2018) ........12, 13

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007) ...............................................................6, 9

*McCafferty v. Newsweek Media Grp., Ltd.*,
    No. CV 18-1276, 2019 WL 1078355 (E.D. Pa. Mar. 7, 2019),
    *aff'd*, 955 F.3d 352 (3d Cir. 2020)......................................................19

*Noah Bank v. Sunday J. USA Corp.*,
    No. CV 18-1413, 2018 WL 6622999 (E.D. Pa. Dec. 18, 2018) .............9

*O'Connor v. Sandy Lane Hotel Co.*,
    496 F.3d 312 (3d Cir. 2007) ..................................................................7

*Pace v. Baker-White*,
    432 F. Supp. 3d 495 (E.D. Pa. 2020)..............................................14, 15

*Patterson by Patterson v. F.B.I.*,
  893 F.2d 595 (3d Cir. 1990) ............................................................... 5

*Psota v. New Hanover Twp.*,
  No. CV 20-5004, 2021 WL 6136930 (E.D. Pa. Dec. 29, 2021) ............ 21

*Purcell v. Ewing*,
  560 F. Supp.2d 337 (M.D. Pa. 2008).................................................. 16

*Reedy v. Evanson*,
  615 F.3d 197 (3d Cir. 2010) .............................................................. 21

*Reeves v. Middletown Athletic Ass'n*,
  2004 PA Super 475, 866 A.2d 1115 (2004) ........................................ 21

*Tucker v. Merck & Co., Inc.*,
  102 F. App'x 247 (3d Cir. 2004) ........................................................ 16

*Wilkes v. State Farm Ins. Cos.*,
  No. 05–586, 2005 WL 1667396 (M.D. Pa. July 15, 2005) .................. 20

**STATUTES**

42 Pa.C.S. § 8343(a) ............................................................................ 13

**OTHER AUTHORITIES**

Rule 12(b)(2) ......................................................................................... 5

Rule 12(b)(6) ..................................................................................... 2, 5

## I.    INTRODUCTION

Plaintiff Christopher Hadnagy's Complaint (Dkt. 1; "Compl.") should be dismissed for lack of personal jurisdiction over Defendants. In addition, the Complaint alleges conduct by Defendants that is neither unlawful nor actionable.

Each year, Defendants Jeff Moss and Def Con Communications ("Def Con") host one of the largest and most influential information and computer security conferences in the country. The event, known as Def Con, is the preeminent industry gathering of "hackers" and draws tens of thousands of attendees annually.

Mr. Hadnagy was one of them—until February 9, 2022, when Def Con issued a statement banning Mr. Hadnagy and his company, Social-Engineer LLC ("S-E"), from future Def Con events. Def Con had received multiple reports about Mr. Hadnagy violating Def Con's code of conduct. Def Con had investigated the reports, conferred with the reporting parties and with Mr. Hadnagy, and determined that the severity of the reported transgressions warranted a ban from Def Con events. Def Con posted a two-sentence update on its blog stating as much.

Mr. Hadnagy has levied from this statement a dizzying array of intentional tort claims—including defamation, tortious interference with contract, and intentional infliction with emotional distress—and, loudly trumpeting his status as a victim of "cancel culture," seeks punitive

damages to boot. He filed these meritless claims in Pennsylvania on the supposed bases that S-E does business here and because the Def Con website is accessible here. These scantiest of reeds do not support personal jurisdiction over Defendants. And even if they did, Mr. Hadnagy's claims are inadequately pleaded, substantively flawed, and should be dismissed with prejudice under Rule 12(b)(6).

## II.    BACKGROUND

Defendant Jeff Moss is the founder of Def Con, which conducts an annual hacker conference in Las Vegas, Nevada (the "Event"). Compl. ¶¶ 7, 9. The Event is one of the world's largest hacker conventions, and it typically hosts professionals to speak about IT-related or hacking-related subjects. *Id.* ¶ 26. Attendees include law enforcement agencies and representatives from large corporations. *Id.* ¶ 31. The Event is highly regarded in the tech industry and has grown exponentially since its inception in 1993. *Id.* ¶ 32.

Def Con implemented a conference code of conduct ("Code of Conduct") in 2015. *Id.* ¶ 34. The Code of Conduct prohibits "harassment," which includes "deliberate intimidation and targeting individuals in a

manner that makes them feel uncomfortable, unwelcome, or afraid."[1,2] The Code of Conduct applies to "everyone," and Def Con explicitly reserves the "right to respond to harassment in the manner we deem appropriate, including but not limited to expulsion[.]" *Id.*

Starting in 2017, Def Con began to publicly share a summary of incidents that happened at the Event for a given year (the "Transparency Report").[3] Mr. Moss's express hope "is that by doing this DEF CON will encourage other conventions to duplicate this reporting and share their data so collectively we can shed some light on the challenge we face in creating more safe and inclusive events." *Id.* (typo fixed).

The Event hosts a multitude of "villages," which are breakout sessions that invite smaller groups of attendees to participate in cybersecurity challenges and demonstrations related to different topics.

---

[1] Mr. Hadnagy relies upon the Code of Conduct and the Transparency Report (discussed below) in the Complaint and, as such, the Court may properly consider them on a motion to dismiss. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (stating that "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered" on a motion to dismiss.)

[2] A correct copy of the Code of Conduct is attached as Exhibit 1.

[3] A correct copy of the Transparency Report is attached as Exhibit 2.

*Id.* ¶ 27. Mr. Hadnagy hosted a village focused on social engineering (the "SEVillage.")[4] *Id.* ¶¶ 39, 41.

In January 2022, Def Con informed Mr. Hadnagy that neither he nor S-E could attend or participate in future Events based on certain reported violations of Def Con's Code of Conduct. *Id.* ¶¶ 48–49. On February 9, 2022, Def Con published an updated Transparency Report announcing Mr. Hadnagy's ban from future Events (the "Ban Announcement").

The Ban Announcement, which constitutes the *entirety of the alleged defamation* in this case, states:

> We received multiple [Code of Conduct] reports about a DEF CON Village leader, Chris Hadnagy of the SE Village. After conversations with the reporting parties and Chris, we are confident the severity of the transgressions merits a ban from DEF CON.

*Id.* ¶ 55.

Per Mr. Hadnagy, the Ban Announcement kicked off a cavalcade of horribles. According to Mr. Hadnagy, "[i]t is believed and therefore averred that due to the vague but troubling statement . . . many have *assumed*" that Mr. Hadnagy perpetrated sexual misconduct or other "abhorrent" behavior. *Id.* ¶¶ 58–59 (emphasis added). According to the Complaint, the Ban Announcement, which Mr. Hadnagy characterizes as "vague but scathing," "inescapably implies" that Mr. Hadnagy's conduct

---

[4]  Social engineering relates to human error and the threat it poses to information security. *Id.* ¶ 41.

was "outrageous." *Id.* ¶¶ 75, 77. Mr. Hadnagy alleges that the Ban Announcement "falsely accuses him of what could only be despicable conduct, *in order to* harm his reputation[.]" *Id.* ¶ 78 (emphasis added). Mr. Hadnagy further alleges that Defendants knew about his contracts with third parties and issued the Ban Announcement to harm these business relationships for Defendants' benefit. *Id.* ¶¶ 93–94, 96.

On August 3, 2022, Mr. Hadnagy filed this lawsuit.

### III.   LEGAL STANDARD

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction "is inherently a matter which requires resolution of factual issues outside the pleadings." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990). Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. *Id.* at 603–04.

Under Rule 12(b)(6), a court conducts a two-step inquiry to test the legal sufficiency of the complaint. First, well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## IV.    ARGUMENT

### A.    The Court lacks personal jurisdiction over Defendants.

The Court should dismiss all of Mr. Hadnagy's claims for the simple reason that there is no personal jurisdiction to litigate his claims. Personal jurisdiction can be either general or specific. General jurisdiction permits the court to exercise jurisdiction over all claims against a defendant because the defendant is essentially at home in the forum; specific jurisdiction allows the court to exercise jurisdiction only over a defendant's forum-related activities. *Kelly v. Vertikal Press, Ltd.*, No. CV 20-2315, 2020 WL 6395459, at *1 (E.D. Pa. Nov. 2, 2020). Mr. Hadnagy (quite correctly) does not assert that this Court has *general* jurisdiction because there are "no allegations to show that Defendant's affiliations with [Pennsylvania] are so continuous and systematic as to render it essentially at home in this forum." *Id.* at *2 (cleaned up). So the inquiry turns on whether the Court has specific jurisdiction over allegedly forum-specific activities.

Determining whether specific jurisdiction exists involves a three-part inquiry. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). First, the defendant must have "purposefully directed his activities" at the forum. *Id.* (internal quotations and citation omitted). Purposeful direction requires "a deliberate targeting of the forum." *O'Connor v.*

*Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). The unilateral activity of those who claim some relationship with a nonresident defendant is insufficient. *Id.* "And contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *Id.*

Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *Id.* Whether a plaintiff's claims "arise out of or relate to" the activities directed at the state "depends . . . on the type of claim brought." *Harvey A. Kalan, M.D., Inc. v. Koresko Fin. LP*, No. CV 14-5216, 2020 WL 1853468, at *3 (E.D. Pa. Apr. 13, 2020) (citing *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020)). For tort claims, "[t]he defendant must have benefited enough from the forum state's laws to make the burden of facing litigation there proportional to those benefits." *Id.* at *3 (citation omitted). For intentional torts specifically, "[t]he defendant must have expressly aimed its tortious conduct at the forum to make the forum the focal point of the tortious activity. And the plaintiff must have felt the brunt of the harm in the forum." *Id.* (citation omitted).

Finally, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comports with fair play and substantial justice." *Id.* (internal quotations and citation omitted).

By this standard, the Court lacks jurisdiction to hear this dispute because Def Con did not "purposefully direct" at Pennsylvania the

conduct over which Mr. Hadnagy sues and because Mr. Hadnagy's claims do not "arise out of or relate to" Def Con's alleged contacts with Pennsylvania. To attempt to get around these jurisdictional defects and litigate in his preferred venue, Mr. Hadnagy presents a two-part theory of personal jurisdiction. First, according to Mr. Hadnagy, this Court has jurisdiction because *his company* is based in Pennsylvania and was allegedly solicited by Defendants to participate in the Def Con event. Compl. ¶ 23. Second, Mr. Hadnagy asserts that the Court must have jurisdiction simply because Def Con has a *website* accessible to individuals who live in Pennsylvania (as well as everywhere else in the United States). *Id.* at ¶ 22. Neither theory passes muster under the well-recognized effects test, and the Court should dismiss these claims for lack of jurisdiction.

## 1.   Mr. Hadnagy's "solicitation" theory does not establish personal jurisdiction.

Mr. Hadnagy's "Defendants solicited me to attend Def Con" theory does not create personal jurisdiction. Because Mr. Hadnagy exclusively pleaded intentional tort claims, he must satisfy the "effects test" described in *Danziger* to demonstrate personal jurisdiction, which requires him to show that Defendant expressly aimed its alleged misconduct at Pennsylvania. But Mr. Hadnagy has failed to plead the "express aiming" element of the effects test, and he could not plausibly do so if he tried.

Recent Third Circuit authority requires courts to apply the effects test when assessing defendants' challenges to personal jurisdiction in intentional tort cases. *Danziger*, 948 F.3d at 130 ("Intentional torts require" an allegation of express aiming of the tortious conduct at the forum); *see also Kyko Glob., Inc. v. Bhongir*, 807 F. App'x 148, 151–52 (3d Cir. 2020) ("Because fraud is an intentional tort, we examine the exercise of jurisdiction . . . using the effects test[.]") (cleaned up). And to establish that a given defendant "expressly aimed" their conduct, the plaintiff has to *point to specific activity* directed at the forum. *Marten*, 499 F.3d at 297–98 (emphasis added).

Mr. Hadnagy has not and cannot point to Defendants' specific activity targeted at Pennsylvania. Defendants posted their allegedly defamatory statement on the Def Con blog, which is not "expressly aimed" at Pennsylvania. *See Noah Bank v. Sunday J. USA Corp.*, No. CV 18-1413, 2018 WL 6622999, at *4 (E.D. Pa. Dec. 18, 2018) (Beetlestone, J.) (applying effects test and finding that allegedly defamatory statement posted on website accessible in Pennsylvania was not targeted at Pennsylvania and did not create personal jurisdiction here). Likewise, the mere fact that S-E is based in Pennsylvania does not create personal jurisdiction here, as Third Circuit precedent makes clear. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998) (applying effects test and asserting knowledge that the plaintiff resides in and

would experience harm in Pennsylvania is insufficient to satisfy the "express aiming" element.)

There is no plausible allegation of "express aiming," so Mr. Hadnagy's "solicitation" theory is fatally flawed.

### 2. Operating the Def Con website does not establish personal jurisdiction.

Mr. Hadnagy's "operation of website" theory fares no better. It fails on the same effects-test-related grounds as the "solicitation" theory. And it's additionally flawed because even setting the lack of "express aiming," Mr. Hadnagy's claims do not arise out of or relate to any solicitation of Pennsylvania residents via the Defcon.org website.

Recent precedent illustrates the point. In *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021), the Third Circuit rejected the plaintiff's contention that the defendants' unrelated contacts with Pennsylvania created personal jurisdiction for her unauthorized use of name and likeness claim. The plaintiff alleged that the defendants targeted their advertising business at Pennsylvania; one defendant had an online store that sold products to Pennsylvanians; and the other defendant had an online community organized around Philadelphia. *Id.* But the alleged contacts did not relate to the misappropriation of the plaintiff's image, so the Third Circuit held that there was no personal jurisdiction over the defendants. *Id.*

As in *Hepp*, Mr. Hadnagy's claims have nothing to do with Defendants' "alleged efforts to solicit attendance at the Event throughout the Commonwealth[.]" Compl. ¶ 22. Mr. Hadnagy does not plead, for example, that he made a conference-related contract with Defendants because of these attendance-solicitation efforts, or that Defendants defrauded Mr. Hadnagy in these solicitations about the conferences, or anything to this effect. His defamation-related tort claims exist entirely independently of Defendants' "efforts to solicit attendance at the Event throughout the Commonwealth[.]" They do not arise out of or relate to Defendants' alleged solicitation of Pennsylvania residents through the Defcon.org website, so they do not support personal jurisdiction.

### B.     Mr. Hadnagy's claims also fail as a matter of law.

Mr. Hadnagy's claims lack substantive merit even ignoring the unequivocal lack of personal jurisdiction for them. His alter ego allegations against Mr. Moss are threadbare even in the most generous reading and do not come within shouting distance of plausibility under *Iqbal* and *Twombly*. Likewise, the claims against Def Con for (1) defamation and false light, (2) tortious interference with contract, and (3) intentional infliction of emotional distress are inadequately pleaded, and dismissal with leave to amend will not cure their legal defects. The Complaint should be dismissed with prejudice.

### 1.     The alter ego claims against Mr. Moss.

Mr. Hadnagy pleads in an entirely conclusory fashion that Mr. Moss is the alter ego of Def Con and is thus "liable for the obligations, debts, and liability of Defendant DEF CON arising under this Complaint." Compl. ¶¶ 12–18. This is inadequate to state claims against Mr. Moss individually. Since Mr. Hadnagy has not and cannot plead plausible facts supporting his alter ego contention, the claims against Mr. Moss should be dismissed with prejudice.

To pierce the corporate veil, one must demonstrate "that a corporation's affairs and personnel were manipulated to such an extent that it became nothing more than a sham used to disguise the alter ego's use of its assets for his own benefit in fraud of its creditors." *Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1521 (3d Cir. 1994). "[A]verments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in *Twombly*, such averments cannot support a veil-piercing claim." *Malone v. Weiss*, No. CV 17-1694, 2018 WL 827433, at *2 (E.D. Pa. Feb. 12, 2018) (citation omitted).

Mr. Hadnagy's alter ego allegations are fatally defective because (1) they are mere recitations of the factors of the veil-piercing test, and (2) they are pleaded on information and belief. *See, e.g.*, Compl. ¶ 13 (listing factors of veil-piercing test without supporting factual allegations; *id.* ¶¶ 12–13, 15 (alter ego allegations are pleaded on information and belief).

- 12 -

This Court dismissed recently dismissed veil-piercing claims on precisely these grounds. *See Malone*, 2018 WL 827433, at *2–3.

### 2.    The defamation and false light claims.[5]

Mr. Hadnagy alleges a panoply of grievances: among other things, he is the victim of "cancel culture," Compl. ¶ 67; Def Con falsely concocted the Ban Announcement to force the transfer of the SEVillage into the hands of third parties (for unexplained reasons), *id.* ¶¶ 53–54; and the Ban Announcement caused speculation that Mr. Hadnagy had sexually harassed or assaulted someone or engaged in "abhorrent" behavior, *id.* ¶¶ 58–59. These allegations are insufficient to state a claim for defamation or false light.

To prevail on the merits of a defamation claim, plaintiffs must prove: (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 PA.C.S. § 8343(a). A statement is defamatory if it "tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or

---

[5] Pennsylvania courts apply a similar analysis to defamation and false light claims. *Hill v. Cosby*, 665 F. App'x 169, 177 (3d Cir. 2016) (citations omitted). While the claims differ in some respects, both fail due to the same shortcomings here and are thus addressed together.

profession." *Agriss v. Roadway Express, Inc.*, 483 A.2d 456, 461 (Pa. Super. Ct. 1984).

"When the implication alleged by the plaintiff is not reasonably susceptible of a defamatory meaning, the plaintiff has failed to state a claim." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 510 (E.D. Pa. 2020) (subsequent history omitted). "The nature of the audience seeing or hearing the remarks is [] a critical factor in assessing whether a communication is capable of a defamatory meaning. The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Agriss*, 483 A.2d at 461–62 (citations and internal quotations omitted).

Similarly, the tort of false-light invasion of privacy requires "publicity that unreasonably places the other in a false light before the public," and "[t]he elements to be proven are publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public." *Strickland v. Univ. of Scranton,* 700 A.2d 979, 987 (Pa. Super. Ct. 1997) (citation omitted).

Mr. Hadnagy's defamation and false light claims fail for at least three reasons. First, the Ban Announcement is not reasonably susceptible of a defamatory meaning or highly offensive to a reasonable person because it is not suggestive of sexual or "abhorrent" conduct. The Ban Announcement does not reference any such conduct. Nor does it refer

- 14 -

to gender or other identifiers implying a sexual nature to the allegations against Mr. Hadnagy. To the contrary. The Ban Announcement states Def Con banned Mr. Hadnagy for Code of Conduct violations, and the Code of Conduct prohibits "harassment" generally—which is defined as deliberately intimidating or targeting individuals in a manner that makes them feel uncomfortable, unwelcome, or afraid. Ex. 1 (screenshot of Code of Conduct). The word "sexual" is absent from the Code of Conduct; the term "harassment" is broadly defined; and the Code of Conduct applies to "everyone." *Id.* The Code of Conduct is easily available, easy to read, and easy to understand. Notwithstanding Mr. Hadnagy's allegations, the Ban Announcement cannot plausibly be read as referring specifically to sexual harassment or other abhorrent conduct. The link is absent, and Mr. Hadnagy admits as much when he alleges— on information and belief—that third parties had to "assume" the conduct was sexual in nature or abhorrent. Compl. ¶¶ 58–59.

Second, the Ban Announcement is a non-actionable opinion. Cases in which challenged statements feature equivocal or cautionary language are routinely dismissed because the statements are non-actionable opinions. *Pace*, 432 F. Supp. 3d at 512–13. It is apparent from the Ban Announcement itself that Def Con was interpreting the results of its own investigation, expressing its own subjective view regarding the alleged Code of Conduct violations, and not claiming to be in possession of "objectively verifiable facts." Indeed, the Ban Announcement notes that

- 15 -

conversations occurred with the reporting parties *and* Mr. Hadnagy, and Def Con was *confident* in its decision, not *certain*. Courts regularly protect far more offensive insinuations as protected opinion. *See, e.g.*, *Purcell v. Ewing*, 560 F. Supp. 2d 337, 342 (M.D. Pa. 2008) (finding statements that alumnus looked like "someone accused of child molestation" was non-actionable opinion); *In re Maze*, Civ. A. Nos. 98-33715, 99-1825, 1999 WL 554600, at *2 (E.D. Pa. July 16, 1999) (finding statement in letter that plaintiff failed to pay taxes, "which money he seemingly misappropriated from his employees[,]" was non-actionable opinion).

Third, Mr. Hadnagy has failed to plead the "abuse of a conditionally privileged occasion" element, and he cannot plausibly do so. "A conditional privilege attaches to communications made on a proper occasion, from a proper motive, and in a proper manner . . . whenever circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know." *Tucker v. Merck & Co.*, 102 F. App'x 247, 253–54 (3d Cir. 2004). "Thus, proper occasions giving rise to a conditional privilege exist when (1) some interest of the person who publishes defamatory matter is involved; (2) some interest of the person to whom the matter is published or some other third person is involved; or (3) a recognized

interest of the public is involved." *Beckman v. Dunn*, 276 Pa. Super. 527, 536, 419 A.2d 583, 588 (1980).

Here, Def Con's Ban Announcement concerned Mr. Hadnagy's attendance at future Def Con events; it related to the interest of members of the information security community to be free from harassment; and it was a decision of interest for the information security public. The Ban Announcement is conditionally privileged.

Finally, Mr. Hadnagy has failed to adequately plead the false light claim. The only facts disclosed were of "legitimate concern" in the information security community. According to the Complaint, Mr. Hadnagy led one of the most popular attractions at the most popular hacker conference in the world. Given his position of power, the transgressions alluded to in the Ban Announcement were plainly of legitimate concern to Def Con attendees and Def Con itself.

### 3. The tortious interference claims.

Mr. Hadnagy alleges that Defendants tortiously interfered with his third-party contracts despite having no discernable motive or economic benefit to do so. The tortious interference claims fail as a matter of law.

The elements of intentional or tortious interference with contractual relations are (1) the existence of a contractual relationship between the complainant and a third party; (2) an *intent* on the part of the defendant to harm the plaintiff by interfering with *that contractual relationship*; (3) the absence of privilege or justification on the part of the

defendant; and (4) the occasioning of actual damage as a result of defendant's conduct. *Empire Trucking Co. v. Reading Anthracite Coal Co.*, 2013 PA Super 148, 71 A.3d 923, 932–33 (2013) (emphases added). "Intentional" and "tortious" interference with contract claims are not different claims in Pennsylvania and will be addressed together.[6] *Int'l Diamond Imps., Ltd. v. Singularity Clark, L.P.*, 2012 PA Super 71, 40 A.3d 1261, 1275–76 (2012).

Mr. Hadnagy has failed to plead the requisite "intent . . . to harm the plaintiff by interfering with *that contractual relationship*" other than in a conclusory and inadequate manner. *See, e.g.*, Compl. ¶ 96 (alleging, "upon information and belief," and without elaboration, that Defendants' conduct "was calculated and intended to harm Plaintiffs' reputation and business relationships for [Defendants'] benefit.") Mr. Hadnagy vaguely alleges that Defendants "intentionally interfered with Plaintiff's contractual relationships[.]" *Id.* ¶ 86. But—per Mr. Hadnagy's own allegations—the *purpose* of the Ban Announcement was to replace S-E's "village" at Def Con conferences. *Id.* ¶ 53. This has nothing to do with any intent to interfere with Mr. Hadnagy's third-party contracts, such as with Northern Trust, *see id.* ¶ 72, or any other third parties.

---

[6] Accordingly, Mr. Hadnagy's "intentional interference with contractual relations" claim (Count II) and "tortious interference with contractual relations" (Count III) claims are duplicative. One should be dismissed for this reason alone.

Mr. Hadnagy alleges Def Con published the Ban Announcement while knowing it would "undoubtedly interfere with Plaintiffs' ability to retain and grow its business," but that is not the same as an *intent* to harm Mr. Hadnagy by interfering with contractual negotiations. Intent is required. *Int'l Diamond Imps.*, 40 A.3d at 1275–76. Nor can Mr. Hadnagy plausibly allege (nor has he done so except in a conclusory fashion, *see* Compl. ¶ 94) that Defendants were aware of the third-party contracts with which they're accused of interfering. Mr. Hadnagy has failed to plead a plausible claim for relief for intentional interference with contractual relations, and the claim should be dismissed with prejudice.

### 4. The intentional infliction of emotional distress ("IIED") claim.

Mr. Hadnagy asks the Court to do what no other state or federal court in Pennsylvania has done: recognize an IIED claim arising from an allegedly defamatory statement.

To prove an IIED claim, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe. *Hooten v. Pa. Col. of Optometry*, 601 F. Supp. 1151, 1154–55 (E.D. Pa. 1984). For an IIED claim to survive, the court must find that the alleged misconduct is so extreme and outrageous that it "go[es] beyond all possible bounds of decency, and . . . [is] regarded as atrocious, and utterly intolerable in a civilized society." *Wilkes v. State*

*Farm Ins. Cos.,* No. 05–586, 2005 WL 1667396, at *4 (M.D. Pa. July 15, 2005) (citation and internal quotation marks omitted). Pennsylvania courts have found extreme and outrageous conduct "only in the most egregious of situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children." *Cheney v. Daily News L.P.*, 654 F. App'x 578, 583–84 (3d Cir. 2016). Moreover, Pennsylvania law requires some type of *physical harm* to satisfy the severe emotional distress element. *Di Loreto v. Costigan*, 600 F. Supp. 2d 671, 691 (E.D. Pa.), *aff'd*, 351 F. App'x 747 (3d Cir. 2009). Not a single Pennsylvania case has upheld an IIED claim predicated upon allegedly defamatory language. *Hill v. Cosby*, No. 15c1658, 2016 WL 491728, at *9 (W.D. Pa. Feb. 9, 2016), *aff'd*, 665 F. App'x 169 (3d Cir. 2016).

The Ban Announcement is not extreme and outrageous conduct, period. The following corollary illustrates the point. As a general rule under Pennsylvania law, sexual harassment does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress. *Hoy v. Angelone*, 456 Pa. Super. 596, 610–11, 691 A.2d 476, 483 (1997) (subsequent history omitted). If sexual harassment itself is not sufficiently "outrageous" for intentional infliction of emotional distress purposes, the allegation that Defendants *implied* Plaintiffs had sexually harassed unknown parties assuredly falls short. Compl. ¶ 75 (statement "inescapably implies" that Defendants' acts were

"outrageous."). Mr. Hadnagy's theory posits that it is more "outrageous" to post a statement allegedly insinuating that Mr. Hadnagy sexually harassed someone than it is to *actually sexually harass* someone. That is not the law.

Moreover, Mr. Hadnagy has failed to plead physical injury or harm resulting from the IIED claim, as Pennsylvania law requires. *See, e.g.*, *Reedy v. Evanson*, 615 F.3d 197, 232 (3d Cir. 2010) (affirming dismissal of a plaintiff's IIED claim based on alleged police misconduct against her because the plaintiff "has not pointed to any physical harm she suffered as a result of police conduct and, for that reason alone, her intentional infliction of emotional distress claim fails as a matter of law."); *Di Loreto*, 600 F. Supp. 2d at 691 ("Plaintiff's failure to show that she suffered any physical harm necessitates dismissal of her IIED claim"); *Dixon v. Boscov's, Inc.*, Civ. A. No. 02–1222, 2002 WL 1740583, at *3 (E.D. Pa. July 17, 2002) (holding that complaint that failed to allege any physical injury did not state a claim for IIED under Pennsylvania law); *Reeves v. Middletown Athletic Ass'n*, 2004 PA Super 475, ¶ 17, 866 A.2d 1115, 1122–23 (2004) (stating that a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct); *Fulton v. United States*, 198 F. App'x 210, 215 (3d Cir. 2006) (per curiam) ("In Pennsylvania, both intentional and negligent infliction of emotional distress requires a manifestation of physical impairment resulting from the distress").

Mr. Hadnagy's IIED claim should be dismissed with prejudice.

## V.      CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this case for lack of personal jurisdiction. If the Court finds personal jurisdiction, Defendants respectfully request that the Court dismiss the claims against Defendants with prejudice.

DATED: October 11, 2022.

By:  */s/ Matt Mertens*
Matthew Mertens (admitted PHV)
**PERKINS COIE LLP**
1120 NW Couch Street, 10th Floor
Portland, Oregon 97209-4128
503.727.2199
MMertens@perkinscoie.com

David Perez (admitted PHV)
**PERKINS COIE LLP**
1201 Third Avenue
Suite 4900
Seattle, Washington 98101-3099
206.359.6767
DPerez@perkinscoie.com

By:  */s/ Jonathan L. Cochran*
Jonathan L. Cochran
John S. Stapleton
**LeVAN STAPLETON SEGAL COCHRAN LLC**
One Liberty Place
1650 Market Street, Suite 3600

- 22 -

Philadelphia, PA 19103
215.261.5210
jcochran@levanstapleton.com

*Counsel for Defendants Jeff Moss and*
*DEF CON Communications, Inc.*