**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRISTOPHER J. HADNAGY** **Individually and on behalf of SOCIAL-** **ENGINEER, LLC,** <br>           **Plaintiffs,** | **CIVIL ACTION** |
|     **v.** | **NO.  22-3060** |
| **JEFF MOSS and DEF CON** **COMMUNICATIONS, INC.,** <br>                 **Defendants.** | |

**MEMORANDUM OPINION**

This suit revolves around Defendants' publication of a so called "Transparency Report" on their website, which Plaintiff Christopher Hadnagy, individually and on behalf of Social-Engineer LLC, argues is anything but.  Plaintiffs sued Jeff Moss and DEF CON Communications, Inc. bringing Defamation, Intentional Interference with Contractual Relations, Invasion of Privacy/False Light, and Intentional Infliction of Emotional Distress claims. Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants have moved to dismiss the Complaint on the basis that this Court has no jurisdiction.  In the alternative, Defendants move for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Defendants' motion to dismiss for lack of personal jurisdiction will be granted.  Accordingly, their motion under Rule 12(b)(6) will not be addressed.  Plaintiffs' requests for jurisdictional discovery and to amend will, for the reasons below, be denied.

I.    **FACTUAL BACKGROUND**[1]

DEF CON conducts an annual hacker conference in Las Vegas, Nevada.  This conference

---

[1] These facts are drawn from the Complaint and, for the purposes of the motion to dismiss, will be taken as true.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

is one of the world's largest hacker conventions, and typically hosts professionals to speak about IT and hacking-related subjects. It hosts break-out sessions, or "villages", which invite smaller groups of attendees to participate in, for instance, cyber-security challenges, games, or demonstrations. Moss and DEF CON held the first conference in 1993 and every year since it has grown in size. It is now highly regarded in the tech industry. While DEF CON, through its website, promotes "open discussion between participants, where radical viewpoints are welcome and a high degree of skepticism is expected" it also (as of 2015) posted on its website a Code of Conduct which states, in relevant part, "we do not condone harassment against any participant, for any reason. Harassment includes deliberate intimidation and targeting individuals in a manner that makes them feel uncomfortable, unwelcome, or afraid."

For years, Plaintiffs Hadnagy and Social-Engineer participated in the conference and hosted one of the most attended villages, the SEVillage—focused on Hadnagy's expertise: human error and the threat it poses to information security as well as applying scientifically proven methods to uncover vulnerabilities, define risk, and provide remediation—which hosted a hacking competition where teams attempt to attack and defend computers or networks.

Although the village was so popular that it had required a 13,000 square foot space to accommodate all those who wished to participate, Plaintiffs chose not to participate in the August 2021 conference. Then, in or around January 2022, Defendants informed Hadnagy that neither he nor Social-Engineer could attend, contribute to, or participate at future conferences. The reasons given were violations of DEF CON's Code of Conduct. Plaintiffs deny any such violation and repeatedly requested additional, detailed information regarding the alleged violations, but were ignored.

Then, on or around February 9, 2022, Moss and DEF CON published an announcement,

termed the "Transparency Report", on the DEF CON website stating, "[w]e received multiple [Code of Conduct] violation reports about a DEF CON Village leader, Chris Hadnagy of the SE Village.  After conversations with the reporting parties and Chris, we are confident the severity of the transgressions merits a ban from DEF CON."  This Transparency Report was publicly accessible on the Internet throughout the United States and abroad.  A firestorm on social media followed its publication speculating as to what Hadnagy had done including that he perpetrated sexual assault and/or sexual harassment.  Others assumed that Hadnagy's behavior must have been abhorrent because the conference typically condones extreme or unique behavior.  On February 10, 2022, an article titled "DEF CON bans social engineering expert Chris Hadnagy" was published on TechTarget.com, a renowned and well-known news source in the tech community.  Plaintiffs' Complaint alleges that the Transparency Report damaged Hadnagy's reputation and negatively impacted Social-Engineer's business.  One of Plaintiffs' leading clients, Northern Trust Corporation, among others, refused to work with Plaintiffs following the publication of the Transparency Report, and specifically referenced the Transparency Report in refusing to work with them.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(2) provides that a party may seek dismissal of a complaint for lack of personal jurisdiction.  If a defendant so moves, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).  Legal conclusions by a plaintiff that "are no more than conclusions [and] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The burden of proof to establish personal jurisdiction is on the plaintiff.  *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566

F.3d 94, 102 (3d Cir. 2009) ("*D'Jamoos*").

## III.   DISCUSSION

### A.  Facts Considered on a Motion to Dismiss

The allegations found in the Complaint which are relevant to a personal jurisdiction analysis are: the parties presumed citizenship and principal places of business; that Defendants solicited Plaintiffs to participate in the conference, the Transparency Report; that the DEF CON website was accessible throughout the U.S. and abroad; that the DEF CON conference is one of the world's largest and is highly regarded in Plaintiffs' industry; and, that Plaintiffs suffered negative effects following the Transparency Report.

Here, both parties make frequent reference to the DEF CON website (https://defcon.org/), specifically the Transparency Report and Code of Conduct pages.  Plaintiffs' Complaint quotes and hyperlinks to website pages on multiple occasions, while Defendants attach as an exhibit to their Motion to Dismiss screenshots of the Transparency Report and Code of Conduct pages from the DEF CON website.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  "[A] court may [also] consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id*.  Defendant's attached screenshots of the Transparency Report and Code of Conduct to their Motion to Dismiss. Neither party raise concerns about these screenshots and Plaintiffs' claims are based, in part, on these webpages.  Accordingly, Defendants' exhibits to their motion to dismiss will be evaluated in deciding this motion.

Separately, Plaintiffs ask the Court to consider additional allegations which they set forth in their response to Defendant's motion to dismiss but which are not found in their Complaint. Specifically, they state for the first time in their Response that similar lifelong bans from DEF CON were the result of sexual abuse or predatory behavior, that the conference's success is the direct result of Plaintiffs' SEVillage, and that there were DEF CON groups in Pennsylvania. These facts will not be considered in deciding the motion to dismiss because "[a] party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion." *Hammond v. City of Phila.*, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001). Indeed, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal citations omitted). As these facts were not averred in the Complaint, they have no import here.

**B.     Personal Jurisdiction**

Personal jurisdiction may be either general or specific. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).[2] Here, Plaintiffs concede that this Court does not have general jurisdiction over Defendants. They do, however, maintain that they have adequately pled sufficient facts to support the Court's exercise of specific jurisdiction over Defendants because of Defendants' forum-specific activities.

According to Federal Rule of Civil Procedure 4(e), "a district court may assert personal

---

[2] General jurisdiction is "all-purpose jurisdiction[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A court may assert general jurisdiction over non-resident corporate defendants "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (internal quotations and alterations omitted); *see also Daimler AG*, 571 U.S. at 138-39 (explaining that "the inquiry . . . is not whether a foreign corporation's in–forum contacts can be said to be in some sense continuous and systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State") (internal quotations and alterations omitted).

jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Remick*, 238 F.3d at 255 (internal quotations omitted). Pennsylvania's jurisdictional statute permits the "exercise [of ]personal jurisdiction over nonresident defendants to the constitutional limits of the [D]ue [P]rocess [C]lause of the [F]ourteenth [A]mendment." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) ("*Mellon Bank*").  A forum is able to assert specific jurisdiction over an out−of−state defendant, who has not consented to suit there, if: 1) "the defendant has 'purposefully directed' his activities at residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)) ("*Burger King*"); *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004); 2) there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State" such "that the defendant's conduct and connection with the forum are such that [s]he should reasonably anticipate being haled into court there[,]" *Bristol−Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 137 S.Ct. 1773, 1781 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980) (spelling original); *see also D'Jamoos*, 566 F.3d at 105[3]; and, 3) "where the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum[.]" *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984) ("*Helicopteros*")).

The "'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." *Helicopteros*, 466 U.S. at 414 (citing *Shaffer v. Heitner*,

---

[3] This factor focusing on the connection between Plaintiffs' claims and the forum is not argued by the parties.

433 U.S. 186, 204 (1977)); *see also Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d

208, 212 (3d Cir. 1984); *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (finding the relationship

is the focus of the "inquiry whether a forum State may assert specific jurisdiction over a

nonresident defendant[.]") (internal quotations omitted); *Ford*, 141 S. Ct. at 1019; *Aldossari on

Behalf of Aldossari v. Ripp*, 49 F.4th 236, 258 (3d Cir. 2022); *see generally* Scott Dodson,

*Personal Jurisdiction, Comparativism, and Ford*, 51 Stetson L. Rev. 187 (2022) (explaining that

this relationship is the specific jurisdiction "modern triumvirate" and creates the points of a

triangle which, as defined by recent Supreme Court decisions, are connected by the three factors:

purposeful availment (where the defendant's conduct and the forum meet), reasonable

foreseeability (the forum and the claim), and related to or arising out of (the claim and the

defendant's conduct)).  This relationship is ever present in the evolving specific jurisdiction

analysis.

      In addition to the three factors, the Due Process Clause of the Fourteenth Amendment

protects a defendant's liberty interest in not being subject to the binding judgments of a forum

with which she has not established "minimum contacts . . . such that the maintenance of the suit

[also] does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v.

State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal

quotations omitted); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017,

1024 (2021) ("*Ford*"); *see also O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316-17 (3d

Cir. 2007).

### i.   *Purposeful Availment*

      The first factor, purposeful availment, is established where a defendant's "contacts

proximately result from actions by the defendant *himself* that create a 'substantial connection'

with the forum State" and "thus invoking the benefits and protections of [the forum state's]

laws." *Burger King*, 471 U.S. at 475 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223

(1957)) (emphasis original); *Remick*, 238 F.3d at 255.  This requirement, "[e]ven in the context

of an intentional tort," as here, "ensures that a defendant will not be haled into a jurisdiction

solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts[.]" *Burger King*, 471 U.S. at

475 (citing *Keeton*, 465 U.S. at 774); *World-Wide Volkswagen Corp.*, 444 U.S. at 299; *Scott v.

Lackey*, 587 F. App'x 712, 716 (3d Cir. 2014).  "Physical entrance [into the forum state] is not

required. . . .  But, what is necessary is a deliberate targeting of the forum."  *O'Connor*, 496 F.3d

at 317.

Plaintiffs argue personal jurisdiction exists through Defendants' acts both on and off the

internet.  *Toys "R" Us*, 318 F.3d at 453 (noting that Courts may consider both internet and non-

internet activities in the "purposeful availment" analysis).

The Supreme Court has yet to designate a test to determine purposeful availment, or

personal jurisdiction generally, through the internet.  *See e.g., Ford*, 141 S.Ct. at 1028 n.4 ("[W]e

do not here consider internet transactions, which may raise doctrinal questions of their own.");

*see also Walden*, 571 U.S. at 290 n.9 (2014) ("We leave questions about virtual contacts for

another day.").  The Third Circuit, however, follows the sliding scale test, which holds: "the

likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to

the nature and quality of commercial activity that an entity conducts over the Internet" such that

"the exercise of jurisdiction is determined by examining the level of interactivity and commercial

nature of the exchange of information that occurs on the Web site."  *Zippo Mfg. Co. v. Zippo Dot

Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ("*Zippo*").

> At one end of the spectrum are situations where a defendant clearly does business
> over the Internet.  If the defendant enters into contracts with residents of a foreign

jurisdiction that involve the knowing and repeated transmission of computer files
over the Internet, personal jurisdiction is proper. At the opposite end are situations
where a defendant has simply posted information on an Internet Web site which is
accessible to users in foreign jurisdictions.  A passive Web site that does little
more than make information available to those who are interested in it is not
grounds for the exercise personal jurisdiction.

*Id.* (internal citations omitted).  This test is the "seminal authority regarding personal jurisdiction

based upon the operation of an Internet web site[,]" and specifically purposeful availment.  *Toys*

*"R" Us*, 318 F.3d at 452 (referring to *Zippo*) (internal quotations omitted).  Thus, where a

website "merely make[s] information available on the Internet[, t]he exercise of personal

jurisdiction over such 'passive' defendants is improper."  *Spuglio v. Cabaret Lounge*, 344 F.

App'x 724, 726 (3d Cir. 2009).

Any capacity for interactivity does not necessarily designate a website as demonstrating

purposeful availment as "there must be something more beyond the mere posting of a passive

web site to indicate that the defendant purposefully (albeit electronically) directed his activity in

a substantial way to the forum state."  *Toys "R" Us*, 318 F.3d at 453 (internal quotes and

brackets omitted).  Plaintiffs argue Defendants solicited Pennsylvanian residents through the

DEF CON website generally, presumably by allowing them to visit and interact with the website.

However, "[t]he mere possibility that someone in Pennsylvania—as anywhere in the world—

might contact the Defendant[s] via the website does not constitute a purposeful contact with the

forum."  *Kelly v. Vertikal Press, Ltd.*, 2020 WL 6395459, at *2-3 (E.D. Pa. Nov. 2, 2020)

(finding defendant's website "insufficient" to establish purposeful availment, even where it

offers interactive aspects because the court found the "Plaintiff has not alleged that a single

Pennsylvania resident has subscribed to or interacted with the Defendant via the website.").

Plaintiffs' Complaint notes that the DEF CON website is "able to be received and accessed

throughout the United States and abroad, thanks to the ability to widely disseminate information

via the Internet[,]" but Plaintiffs fail to otherwise allege that the website targeted Pennsylvania. As such, Plaintiffs argument fails to show minimum contacts via the internet.

With respect to Defendants' non-internet based contacts with Pennsylvania, the analysis is more straightforward. Plaintiffs argue purposeful availment because Moss and DEF CON had contact with Plaintiffs and solicited their attendance at the conference year after year. But, Plaintiffs' interactions with Defendants do not, standing alone, constitute purposeful availment, despite the fact that they may have been long standing and mutually beneficial, as a "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. Indeed, the Supreme Court specifically held "[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King*, 471 U.S. at 478. As such, DEF CON and Moss's solicitation of Plaintiffs alone is insufficient to establish purposeful availment. Even taking Plaintiffs' individual contact with Moss and DEF CON together with any contacts from website, as currently alleged in the Complaint, it is still not enough. Therefore, Plaintiffs have not met their burden of establishing that Defendants purposefully directed their actions toward Pennsylvania.

### ii.    *Arising out of or Relating To: The Effects Test*

Even assuming arguendo that Defendants purposefully availed themselves of Pennsylvania, Plaintiffs fail to establish that their claims arises out of or are so related to Defendants' actions such that there is a "strong connection" between the two. *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021). This factor "depends, in part, on the type of claim

brought[,] . . . [f]or tort claims, the standard is less restrictive . . . [and] intentional torts require more" than other tort claims. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020) ("*Danziger*"). The *Calder* test, or "effects test" for intentional torts "requires the plaintiff to show the following:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

*IMO Indus., Inc.*, 155 F.3d at 265-66; *Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *see also Danziger*, 948 F.3d at 130; *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).

There is no debate that the torts alleged here—defamation, intentional interference with contractual relations, invasion of privacy or false light, and intentional infliction of emotional distress—are intentional torts. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011) ("Intentional torts . . . as distinguished from negligent or reckless torts[,] . . . generally require that the actor intend the consequences of an act, not simply the act itself.") (internal quotations omitted); *see e.g.*, *Owens v. Okure*, 488 U.S. 235, 244 n.7 (1989) (referencing intentional interference with contractual relations and intentional infliction of emotional distress as intentional torts); *see e.g., Smith v. Sch. Dist. of Philadelphia*, 112 F. Supp.2d 417, 425 (E.D. Pa. 2000) (noting intentional infliction of emotional distress, defamation, and invasion of privacy are intentional torts). Element one of the effects test is thus satisfied.

Plaintiffs assert they felt the brunt of the harm in Pennsylvania, namely to Hadnagy's reputation and Social-Engineer's loss of clients: that they lost clients, namely their longstanding client Northern Trust Corporation, among others following the Transparency Report and that those clients or potential clients made specific reference to the Transparency Report when they

declined to work with Plaintiffs. Element two of the effects test is also satisfied.

Thus, the pressing inquiry here is whether the "effects test" third element—did Defendants Moss and DEF CON expressly aim their tortious conduct at the forum—is satisfied in that "[t]he defendant . . . manifest[ed] behavior intentionally targeted at and focused on the forum[.]" *IMO Indus., Inc.*, 155 F.3d at 265 (internal quotation marks omitted). "[T]he plaintiff has to demonstrate the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Marten*, 499 F.3d at 297-98.

Based on the facts in the Complaint, Plaintiffs cannot demonstrate that Defendants' solicitation of his participation in the conference amounts to Defendants' aiming tortious conduct at the forum. Solicitation for participation in the conference, either for Plaintiffs or generally, is not the tortious conduct at issue. Rather, the tortious conduct is Defendants' alleged defamation, intentional interference with contractual relations, invasion of privacy or false light, and intentional infliction of emotional distress. These claims are based on tortious conduct tied to the Transparency Report and the prohibition against Plaintiffs' further participation in the conference. Plaintiffs do not assert the solicitation itself was tortious. For these reasons, Plaintiffs' solicitation arguments are missing the "strong connection" required to satisfy this factor. *Hepp*, 14 F.4th at 208 (3d Cir. 2021).

Plaintiffs next argue Defendants targeted Pennsylvania because the Transparency Report was published on the Internet, which was accessible and widely disseminated, including throughout Pennsylvania. Two leading decisions help to evaluate this argument. First, in *Calder* the Supreme Court found a California court had personal jurisdiction over Florida-based defendants who published defamatory material because: (i) the magazine circulated more in

California than any other state, (ii) the material concerned a California resident regarding her California-based industry, and (iii) drew on interviews with California-based sources. *Calder*, 465 U.S. at 788-90.

Separately, in *Remick v. Manfredy* the Third Circuit distinguished the facts of *Calder* and did not find personal jurisdiction where, allegedly, a defamatory letter (i) was sent by the defendants to the plaintiff's office in Pennsylvania where coworkers could read it and (ii) was broadly disseminated throughout the plaintiff's professional community. 238 F.3d at 259. The Third Circuit found that Pennsylvania was not targeted because the plaintiff's professional community was not centered in Pennsylvania. *Id*. Indeed, the letter was distributed "throughout the country" and as there is no asserted "unique relationship" between the industry at issue and Pennsylvania, there was no basis to find that Pennsylvania was "the focal point" of the defendant's activity. *Id*.

Here, like in *Remick* and unlike *Calder*, Plaintiffs assert no facts to support the theory that the Transparency Report was specifically circulated or concentrated in Pennsylvania. The Complaint alleges that the Transparency Report was "indisputabl[y]" accessible "throughout the United States and abroad[.]" Plaintiffs assert no additional facts indicating that DEF CON's website is read extensively in Pennsylvania, as compared with *Calder* where a disproportionate amount of the readership was based in the forum state. 465 U.S. at 785 (noting the publication's sales in forum state were "almost twice the level of the next highest State"). Also, while the Transparency Report here concerned a Pennsylvania resident, Hadnagy, and a Pennsylvania-based LLC, Social-Engineer, unlike in *Calder* and like in *Remick*, Plaintiffs' professional community is not centered in Pennsylvania. If the conference in question is any indication, Plaintiffs' professional community is distributed "throughout the country" and the world.

*Remick*, 238 F.3d at 259.  As in *Remick*, Plaintiffs "ha[ve] not asserted that Pennsylvania has a unique relationship" with the tech industry or hacking community.  *Id*.  Plaintiffs thereby fail to point to specific tortious activity expressly aimed at Pennsylvania.  Thus, this suit does not satisfy the "effects test" and Plaintiffs' claims do not relate to or arise out of Defendants' actions. Therefore, there is no personal jurisdiction over this action.

### C.  Jurisdictional Discovery

Plaintiffs request that in the event that the Court determines that there is no personal jurisdiction over Defendants, that they be permitted to seek jurisdictional discovery.  District courts "may permit jurisdictional discovery under certain circumstances and at [their] discretion. In general, jurisdictional discovery relates to corporate defendants and arises from an inquiry as to whether they are 'doing business' in the state."  *Doe v. Hesketh*, 15 F. Supp.3d 586, 601 (E.D. Pa. 2014) (citing *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)).  Jurisdictional discovery is proper where a "plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,'"  *Toys "R" Us*, 318 F.3d at 456-58 (internal citations omitted) (finding, on the allegations present at the motion to dismiss, a lack of personal jurisdiction over the defendant, but reversing a lower court's denial of jurisdictional discovery where the plaintiff's request "was specific, non-frivolous, and a logical follow-up based on the information know to [the plaintiff]."), or "[w]here the plaintiff's claim is not clearly frivolous[.]"  *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983).  "[J]urisdictional discovery [is] particularly appropriate where the defendant is a corporation."  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).

Here, Plaintiffs make summary requests for jurisdictional discovery, while also alleging

new facts in their Response to Defendants' Motion to Dismiss that, as addressed *supra*, will not

be considered here.  Unlike in *Toys "R" Us*, where the plaintiff referenced an affidavit in the

record mentioning the defendant's "substantial regular and systemic contacts[,]" specifically

drawing the court's attention to specific discovery of sales within a particular state as compared

to the U.S. writ large, Plaintiffs here make only a broad request for jurisdictional discovery.  *Id*.

at 457-58.  Rather than pointing to specific facts they would seek to discover to cure deficiencies

with both minimum contacts and relating to/arising out of analyses, Plaintiffs do not provide

adequate support granting jurisdictional discovery.  *See e.g.*, *William Rosenstein & Sons Co. v.*

*BBI Produce, Inc.*, 123 F. Supp.2d 268, 275 (M.D. Pa. 2000) (denying a plaintiff's request for

jurisdictional discovery where the plaintiff failed to "explain[] what it wishes to discover and

how this would help overcome the great weight of evidence supporting a finding that this court

lacks jurisdiction."); *see also inno360, Inc. v. Zakta, LLC*, 50 F. Supp.3d 587, 597 (D. Del. 2014)

(finding plaintiff's assertion that residents of the forum state "could, along with the rest of the

internet-using world, access defendant's website . . . is insufficient to support a request for

jurisdictional discovery."); *Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp. 2d

541, 548 (D. Del. 2012) (where the plaintiff "presented no evidence indicating that defendant

conducts business within [the  forum state and] presented no evidence that defendant's services

are available in any state other than Nevada[,] . . . [t]o grant plaintiffs request for a period of

jurisdictional discovery under such circumstances would be to allow plaintiff to 'undertake a

fishing expedition based only upon bare allegations, under the guise of jurisdictional

discovery.'"); *Porthault NA LLC v. Cadeau Exp. Inc.*, 2009 WL 4573598, at *3 (D.N.J. Dec. 2,

2009) (refusing to grant jurisdictional discovery on a motion to dismiss where the request was

too broad to justify specific jurisdiction)*; compare with Neopart Transit, LLC v. CBM N.A. Inc.*,

314 F. Supp.3d 628, 646 (E.D. Pa. 2018) (granting jurisdictional discovery where the facts alleged indicated further investigation may uncover information demonstrating minimum contacts and satisfying the "arising out of or relating to" analysis where Defendants made solicitations in Pennsylvania).  Plaintiffs have failed to point to specific facts justifying their request justify for jurisdictional discovery at this time.  Accordingly, the request shall be denied.[4]

## IV.    CONCLUSION

Because this court lacks personal jurisdiction over Defendants, Defendants' Motion to Dismiss will be granted and the case will be dismissed without prejudice.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**

---

[4] When plaintiffs request to amend their complaint more than "[twenty−one] days after service of a motion under 12(b)[,]" among other instances, plaintiffs must seek "the court's leave."  Fed. R. Civ. P. 15(a)(1).  Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend a pleading] when justice so requires."  *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  "Leave to amend may be denied, however, if amendment would be futile," that is, "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000); *see also Burlington*, 114 F.3d at 1434.  Here, Plaintiffs have requested leave to amend, but only as to their substantive claims, not as to the jurisdictional allegations.  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).  Leave to amend will, accordingly, be denied.